# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
## WESTERN  DIVISION

Keith Greer,
        Petitioner,


        vs.                                    Case No. 1:05cv424
                                               (Dlott, J.; Black, M.J.)


Tim Brunsman,
        Respondent.

## REPORT AND RECOMMENDATION

        Petitioner, who is in state custody at the Chillicothe Correctional Institution
in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant
to 28 U.S.C. § 2254.  This matter is before the Court on the petition; respondent's
return of writ with exhibits; and petitioner's response to the return of writ.  (Docs.
1, 3, 4).

### Factual And Procedural Background

        On March 26, 2002, the Hamilton County, Ohio, grand jury returned an
indictment charging petitioner with one count of possession of cocaine in violation
of Ohio Rev. Code § 2925.11(A); one count of possession of heroin in violation of
Ohio Rev. Code § 2925.11(A); and one count of trafficking in heroin in violation
of Ohio Rev. Code § 2925.03(A)(2).  (Doc. 3, Ex. A).[1]  After a jury trial, petitioner

---

[1]  The indictment contained three additional drug counts against William Barlow (First
and Second Counts) and April N. Forte (Second and Sixth Counts).  (Doc. 3, Ex. A).

was found guilty as charged in Counts 3-5 of the indictment.  (*Id.,* Ex. B).  On December 19, 2002, petitioner was sentenced to concurrent terms of imprisonment of eighteen (18) months for the possession of cocaine offense and ten (10) years on each of the remaining charges of heroin possession and trafficking.  (*Id.*).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District.  In addition to raising two claims challenging the sufficiency and weight of the evidence, petitioner presented the following assignments of error for appellate review: (1) the trial court erred in failing to *sua sponte* order a mistrial after striking a confidential informant's hearsay statements to a police officer, which were introduced at trial in violation of due process and petitioner's right to confront the witnesses against him (First Assignment of Error); (2) the prosecutor's misconduct deprived petitioner of a fair trial (Second Assignment of Error); and (3) petitioner's trial counsel was ineffective when he "failed to object to hearsay, failed to object to the impermissible arguments of the prosecutor, and failed to ask for a mistrial" (Third Assignment of Error).  (*Id.,* Ex. C).

On January 21 2004, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment.  (*Id.,* Ex. E).  In its Judgment Entry, the court made the following findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] regarding the events that resulted in petitioner's convictions:

> The state presented evidence that on March 8, 2002, undercover Cincinnati police officers possessed information that drug sales were being conducted from a home on Bramble Avenue.  Officers sent a confidential informant into the home for the purpose of purchasing drugs.  Before the informant entered the home, he was searched thoroughly for contraband and was given $170 to purchase drugs.

---

[2]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein.  Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

The officers made photocopies of the money in order to keep track of it.  The officers also equipped the informant with a hidden monitor. The officers saw the informant go into the house, have a conversation with another person, leave the home, and return directly to them.  The informant turned over to the officers 3.22 grams of cocaine.

On March 13, 2002, officers were again posted near the house on Bramble Avenue.  The officers saw Greer leave the house and walk to a convenience store where he made a telephone call.  As Greer began to walk back toward the home, the officers arrested him on outstanding warrants.  Greer told the officers that he lived on Chestnut Street in another area of town and that he had just been dropped off by a friend to visit people in the area.  He said that he knew nothing about the house on Bramble Avenue and denied having just left the house, even though the officers told him that they had just seen him leave the premises.  Officers recovered from Greer's pocket $120 of the money that had been given to the informant.

Early the next morning, officers executed a search warrant at the house.  Officers recovered a digital scale containing cocaine residue, plastic straws containing heroin residue, a metal spoon containing cocaine residue, 5.40 grams of cocaine contained in four separate plastic bags, 62.25 grams of heroin contained in several plastic bags and a paper envelope.  The officers also recovered numerous items of drug paraphernalia and drug-packaging materials. An officer with years of experience in drug interdiction explained that a drug dealer or user would use a spoon for numerous purposes, including the packaging of drugs, cooking drugs for injection into the body, and replacing cocaine with baking soda and water to make smaller quantities of crack cocaine.  He also testified that short straws were commonly used by drug abusers to snort drugs.

The officers further found photographs of Greer, and a photograph of a woman on which were printed the words, "I love you Keith."  The officers recovered a car title in Greer's name and several letters addressed to Greer at the Bramble address, as well as utility bills, a hospital bill, and telephone bills in Greer's name, all of which listed the Bramble address.  The officers found no personal effects,

3

documents, or mail for any other person in the house. Nor did the officers find any paperwork listing the Chestnut Street address that Greer had professed to be his residence.

The officers subpoenaed the utility bills for the Bramble house. Those bills indicated that, over a year's time, the utility services were in Greer's name.

(*Id.,* pp. 1-3).

Petitioner's counsel timely appealed to the Supreme Court of Ohio, asserting as propositions of law the same three claims of error by the trial court, the prosecutor and defense counsel that had been raised on direct appeal to the Ohio Court of Appeals. (*Id.,* Ex. F). On June 23, 2004, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.* Ex. G).

Within a year thereafter, petitioner commenced the instant federal habeas corpus action. The petition, which was signed by petitioner on June 3, 2005, was stamped as "filed" on June 21, 2005. (Doc. 1). In the petition, petitioner alleges five grounds for relief.

**Ground One:** Petitioner's conviction is contrary to the Confrontation Clause to the Sixth Amendment . . . when police officers repeatedly testif[ied] to hearsay.

**Ground Two:** Petitioner's conviction is contrary to the Fifth Amendment [as a result of an amendment made to the indictment "subsequent to the indictment's return, without resubmission and without certification by foreman of the grand jury, not put upon file and not bound by grand jury"].

**Ground Three:** Prosecutor's conduct is contrary to the Fourteenth Amendment and violative of Due Process and Equal Protection Clauses [because petitioner was deprived of "a fundamentally fair trial" when the prosecutor "impermissibly shift[ed] the burden of proof to the accused[,] . . . withheld misidentification evidence, denied petitioner access to witnesses, elicited hearsay evidence, and insisted

4

on making improper arguments and improper remarks of drug
purchases and drug suppliers, that were not properly in evidence and
purely hearsay"].

**Ground Four:**  Ineffective assistance of trial counsel . . . by failing
post-indictment and pre-trial objectives through reasonable,
rudimentary investigation and preparation, . . . fail[ing] to lodge
rudimentary objections to improper statements, remarks, arguments
and accusation, . . . fail[ing] to effectively cross-examine witnesses,
and fail[ing] to ask for a mistrial when impropriety allowed.

**Ground Five:**  Trial Court's discretion is contrary to the Fifth, Sixth,
and Fourteenth Amendments to the United States Constitution [due to
the court's abuse of discretion] when it failed to order a Mistrial, Sua
Sponte, after striking the hearsay statements made to a police officer
by an informant and when a police officer repeatedly reiterated
statements and the statements were not covered by any Rule of
Evidence exceptions. . . .

(*Id.,* pp. 6-9, 11, 17-18).

In the return of writ, respondent concedes that the petition is not barred from
review on statute of limitations grounds.  (*See* Doc. 3, Brief, pp. 7-8).  It further
appears that petitioner has exhausted all available state remedies with respect to his
grounds for relief.  Respondent contends that petitioner has waived some of the
claims asserted in the petition due to his procedural defaults in the state courts.
(*Id.,* pp. 8-11).  Respondent also argues that each of petitioner's claims for relief
should be denied as lacking in merit.  (*Id.,* pp. 11-18).

5

## OPINION

### A.  Petitioner Has Waived The Claim Alleged In Ground Two  Because He Never Presented It To The State Courts For Their Consideration

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived.  *See O'Sullivan,* 526 U.S. at 847-848;  *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has pointed out (*see* Doc. 3, Brief, p. 9), petitioner

committed a procedural default with respect to the record-based claim alleged in Ground Two of the petition, because he never raised it to the state courts as an issue requiring correction either by the trial court during the trial proceedings or by the state appellate courts on direct review from his conviction and sentence. (*See id.,* Exs. C, F).[3] Because petitioner thus failed to provide the state courts with the opportunity to correct the alleged error, he has waived the claim absent a showing of cause for his default and actual prejudice as a result of the alleged error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any explanation as "cause" for his failure to present the claim to the state courts either during the trial proceedings or on direct appeal from his conviction. He also has not demonstrated that a "fundamental miscarriage of justice" will occur, or in other words, that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent" of the crimes charged, if such claim is not considered on the merits herein. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005).

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief based on the claim alleged in Ground Two of the petition, because he has waived such claim of error due to his procedural default in failing to present it to the state courts for their consideration during the trial proceedings and on appeal from his conviction and sentence.

---

[3] Respondent also contends that some of petitioner's prosecutorial misconduct claims alleged in Ground Three of the petition are waived, because such claims were only reviewed for "plain error" by the Ohio Court of Appeals due to defense counsel's failure to lodge objections at trial. (*See* Doc. 3, Brief, p. 10). Petitioner suggests that his counsel's ineffectiveness constitutes "cause" for this procedural default, which may require consideration of the merits of his underlying prosecutorial misconduct claims. Therefore, the undersigned assumes, without deciding, that petitioner has not waived any such claims of constitutional error.

**B.  Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Grounds One And Five, Which Stem From The Trial Court's Failure To Declare A Mistrial After Hearsay Testimony Was Presented At Trial**

In Ground One of the petition, petitioner alleges that his Sixth Amendment right to confront the witnesses against him was violated when "police officers repeatedly testif[ied]" about hearsay statements made to them by a confidential informant.  (Doc. 1, p. 6).  In Ground Five, petitioner further claims that his constitutional rights were violated because the trial court failed to *sua sponte* declare a mistrial after striking from the trial record the police officers' improper references to the confidential informant's hearsay statements.  (*Id.,* p. 18).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of these claims, which were raised on direct appeal in the first assignment of error.  The court rejected the assignment of error, reasoning in relevant part as follows:

> In his first assignment of error, Greer argues that the trial court erred in failing to sua sponte order a mistrial after it struck the hearsay testimony of a police officer.  The record demonstrates that the officer testified that the confidential informant had returned from the house under surveillance and given the officer a quantity of cocaine that the informant "indicated was purchased directly from the defendant, Keith Greer, inside his residence ***."  Defense counsel immediately moved to strike the testimony, which the court sustained.  The court further stated, "The jury is instructed to disregard what the confidential informant did.  That's what we call 'hearsay' because the officer–it was not in his presence at that time."

> The Supreme Court of Ohio has held, "The grant or denial of an order of mistrial lies within the sound discretion of the trial court.  A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.  Moreover, mistrials need to be declared only when the ends of justice so require and a fair trial is no longer possible. . . ."  In this case, the trial court sustained defense counsel's objection to the hearsay testimony and promptly gave a curative instruction.  Therefore, we hold that the trial court did not abuse its discretion in failing to order a mistrial. . . .

8

(Doc. 3, Ex. E, pp. 3-4) (footnote to state case citation omitted).

In this case, the state appellate court evaluated the merits of petitioner's claims under an "abuse of discretion" standard of review established by state law in reviewing the granting or denial of mistrials. In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue). However, in a case such as this, where the state court addressed petitioner's claim solely in terms of state law, the federal court must conduct a *de novo* review, instead of applying the more deferential standard of review set forth in § 2254(d). *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004), *cert. denied,* 543 U.S. 1177 (2005); *Maples v. Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003) (citing *Wiggins v. Smith,* 539 U.S. 510 (2003)).[4]

The Court begins its analysis of petitioner's claims by recognizing, as petitioner has argued, that the admission of hearsay statements by a declarant not present or otherwise available for cross-examination at trial may trigger concerns of a possible violation of the defendant's right under the Sixth Amendment's Confrontation Clause to confront and cross-examine the witnesses against him. *See, e.g., Crawford v. Washington,* 541 U.S. 36, 50-60 (2004); *Idaho v. Wright,* 497 U.S. 805 (1990); *Bourjaily v. United States,* 483 U.S. 171 (1987); *Ohio v. Roberts,* 448 U.S. 56 (1980).[5] However, contrary to petitioner's contention, this case does not pose a Confrontation Clause issue because upon objection lodged by defense counsel, the trial court struck the challenged hearsay testimony from the

---

[4] *See also Joseph v. Coyle,* 469 F.3d 441, 450 (6th Cir. 2006) (and cases cited therein), *petition for cert. filed,* No. 06-961 (U.S. Jan. 25, 2007); *Towns v. Smith,* 395 F.3d 251, 257 (6th Cir. 2005); *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003).

[5] *See also White v. Illinois,* 502 U.S. 346, 354 (1992); *United States v. Inadi,* 475 U.S. 387, 393-94 (1986).

evidence to be considered by the jury.[6]  (*See* Doc. 3, Ex. I, Tr. 67-68).

Petitioner's claim essentially is based on the argument that, as a matter of due process, petitioner was deprived of his right to a fundamentally fair trial because the jury was prejudiced and could not disregard the stricken hearsay statements, which came out during the prosecutor's direct-examination of Cincinnati police officer Paul Fangman, in determining petitioner's guilt or innocence.

In a case such as this, involving a claim of ordinary trial error where no specific constitutional guarantee is implicated, the alleged error does not amount to a fair trial violation unless when viewed in the context of the entire record it is found to have "tilted the scales in favor of a guilty verdict" or was "so egregious as to have nullified the legitimacy of the properly admitted substantive evidence of guilt." *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989), *cert. denied,* 495 U.S. 950 (1990); *Webster v. Rees,* 729 F.2d 1078, 1081 (6th Cir. 1984); *cf. Payne v. Borg,* No. C 92-20669 JW, 1994 WL 564573, at *4 (N.D. Cal. Oct. 3, 1994) (unpublished) (in case where the habeas petitioner similarly claimed that "it was not enough for the trial court to merely strike [a state witness's] testimony, but should have declared a mistrial," the district court determined "under the totality of the circumstances, whether [such] testimony was of such a nature that the jury could not have disregarded it and, if so, whether Petitioner suffered prejudice") (citing *Sheppard v. Maxwell,* 384 U.S. 333, 352 (1966), and *Holbrook v. Flynn,* 475 U.S. 560, 572 (1986)).[7]

Moreover, even assuming that error occurred, petitioner is not entitled to habeas corpus relief unless such error had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), in

---

[6]  Petitioner alleges in the petition that the police officers "repeatedly testified" as to the substance of the confidential informant's hearsay statements.  (*See* Doc. 1, p. 6).  However, upon review of the trial transcript, the undersigned can find no other reference by the police officers who testified at trial to statements made to them by the informant regarding the events that transpired outside their presence on March 8, 2002 when the informant was inside the Bramble Avenue house purchasing drugs.

[7]  The Ninth Circuit affirmed the district court's decision in *Payne v. Rowland,* 66 F.3d 335 (table), No. 94-16931, 1995 WL 540525, at *2-4 (9th Cir. Sept. 11, 1995) (unpublished).

10

turn quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *see also O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995); *Payne, supra,* 1994 WL 564573, at *4.

Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand.  *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764.

Here, the trial court's alleged error in merely striking the confidential informant's hearsay statement, as opposed to *sua sponte* declaring a mistrial, did not deprive petitioner of a fair trial, and in any event, did not have a substantial and injurious effect or influence in determining the jury's verdict.  As the Ohio Court of Appeals apparently understood, the risk of prejudice to petitioner was drastically reduced, if not eliminated entirely, when the trial court sustained defense counsel's objection to the hearsay testimony, struck the testimony from the evidentiary record, and immediately thereafter issued a curative instruction to the jury to disregard such testimony.  (Doc. 3, Ex. I, Tr. 67-68).  At the close of the case, before the jury retired to deliberate, the trial court reiterated in its final instructions that the jury could only consider the "evidence," which did "not include answers you were instructed to disregard," in determining petitioner's guilt or innocence. (*Id.,* Tr. 237).

Petitioner was not charged with the crime of selling drugs to the confidential informant on March 8, 2002, but rather with possession and trafficking charges stemming from drugs and other evidence of trafficking activity discovered on March 14, 2002 at his Bramble Avenue residence.  (*See id.*, Ex. A).  As the prosecutor argued in closing, the State's case turned on the circumstantial evidence properly admitted at trial showing that petitioner was the sole resident of the house where the contraband was found.  (*Id.,* Ex. I, Tr. 210-13).

Furthermore, when specifically discussing the evidence that had been admitted at trial regarding petitioner's dealings with the confidential informant, the prosecutor emphasized that although the informant was sent in to the Bramble Avenue residence to buy drugs from petitioner, "[w]e don't know for sure if Mr. Greer was in there on the other end of it."  (*Id.,* Tr. 214).  Instead, the prosecutor suggested it could be inferred that petitioner was the person who sold the cocaine to petitioner because $120 of the "buy-money" was found in his pocket when he

11

was arrested five days later.  (*Id.,* Tr. 215).

Accordingly, upon review of the entire record, the undersigned is convinced that Fangman's one passing remark, which was stricken from the evidence, as to whom "the informant indicated" he purchased drugs from on March 8, 2002, was not sufficiently egregious to trigger fair trial concerns, and in any event, had at most only a minimal effect or influence on the jury's verdict in this case. Petitioner, therefore, has not demonstrated he is entitled to habeas relief based on the claims alleged in Grounds One and Five of the petition.

### C.  Petitioner Is Not Entitled To Relief Based On The Prosecutorial Misconduct Claims Alleged In Ground Three

In Ground Three of the petition, petitioner alleges that he was denied a fair trial because of various acts of misconduct that were committed by the prosecutor during the trial proceedings.  (Doc. 1, p. 9).  Specifically, as argued by petitioner in the state direct review proceedings and in his response to the return of writ, petitioner claims that the prosecutor made certain "improper remarks" in his opening statement; elicited improper hearsay testimony on direct examination of Cincinnati police officer Paul Fangman; "repeatedly" referred to co-defendant William Barlow as petitioner's "supplier," although no evidence establishing that fact was introduced at trial; and made numerous "improper remarks and allegations" about matters not in evidence during his closing argument.  (*See* Doc. 3, Ex. C, pp. 7-8 & Ex. F, pp. 5-6; Doc. 4, pp. 12-13).[8]

In the state direct appeal proceedings, the Ohio Court of Appeals found no merit to these claims, reasoning in pertinent part as follows:

In his second assignment of error, Greer argues that he was denied a fair trial due to prosecutorial misconduct.  Generally, prosecutorial misconduct will not provide a basis for overturning a

---

[8] Petitioner also generally alleges in the petition that the prosecutor shifted the burden of proof to the accused, withheld misidentification evidence, and denied petitioner access to witnesses.  (Doc. 1, p. 9).  These allegations were never brought to the state courts' attention and, in any event, are conclusory.  The undersigned will address only those claims that were specifically argued by petitioner in the state direct review proceedings and in his brief in response to the return of writ.

criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.  The test for whether prosecutorial misconduct mandates reversal is whether the remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the defendant.

\*\*\*\*

Greer argues that the prosecutor committed misconduct by eliciting from the police officer the informant's statement about his purchase of cocaine from Greer.  But the record shows that the prosecutor had only asked the officer what the informant had had on his person following his return from the suspected residence.  Contrary to Greer's assertion, the prosecutor did not elicit from the officer the statement by the informant.  Moreover, in light of defense counsel's immediate objection to the testimony and the court's curative instruction to the jury, Greer can demonstrate no prejudice.

Greer also argues that the prosecutor's opening statement included an improper remark about the informant's purchase of cocaine from Greer, and that the prosecutor should not have said that a co-defendant might testify that he had supplied drugs to Greer.  Greer adds that the prosecutor made improper remarks in closing argument regarding facts not in evidence. . . .

The record demonstrates that, in closing argument, the prosecutor drew reasonable inferences from the evidence presented at trial.  And even if we were to conclude that the prosecutor's comments in opening statement and closing argument were in error, we cannot say that the outcome of the trial would have been different in light of the overwhelming evidence supporting Greer's conviction....

(Doc. 3, Ex. E, pp. 4-5) (footnote citations to state cases omitted).

The scope of federal habeas corpus review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors.  *Donnelly v.*

13

*DeChristoforo,* 416 U.S. 637, 642 (1974).  Although preliminarily the court confronted with a such a claim must determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation.  *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986).  Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

Where, as here, no specific constitutional right is alleged to have been infringed by the prosecutor, petitioner's allegations concern ordinary trial error, which will not amount to a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process."  *Donnelly,* 416 U.S. at 642-43; *see also Darden,* 477 U.S. at 181 ("it 'is not enough that the prosecutor's remarks were  undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process).  The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial.  *United States v. Young,* 470 U.S. 1, 11-12 (1985).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.[9]

_____

[9]  *See also Gillard v. Mitchell,* 445 F.3d 883, 897 (6th Cir. 2006) (citing *Bowling v. Parker,* 344 F.3d 487, 512-13 (6th Cir. 2003), *cert. denied,* 543 U.S. 842 (2004)), *petition for cert. filed,* 75 U.S.L.W. 3296 (U.S. Nov. 22, 2006) (No. 06-747); *Farmer v. Hofbauer,* 1 Fed.Appx. 372, 377-78 (6th Cir. Jan. 10, 2001) (not published in Federal Reporter); *Givens v. Yukins,* 238 F.3d 420 (table), No. 98-2429, 2000 WL 1828484, at **6-7 (6th Cir. Dec. 5, 2000)

As discussed above with respect to the fair trial claim alleged in Grounds One and Five of the petition, *see supra* p. 10, even if it is determined that constitutional error occurred, federal habeas relief may not be granted unless the error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)). Petitioner must meet the *Brecht* standard before he may obtain federal habeas relief for any constitutional error committed by the prosecutor as alleged herein. *Cf. Gordon v. Kelly*, 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **12 (6th Cir. Feb. 1, 2000) (unpublished); *Hensley v, McGinnis,* 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999) (unpublished).

As an initial matter, upon review of the trial transcript, the undersigned agrees with the Ohio Court of Appeals' finding that the prosecutor did not engage in any impropriety when the confidential informant's hearsay statement came out during the direct-examination of Cincinnati police officer Paul Fangman. As the state appellate court pointed out, the prosecutor merely asked Fangman to reveal "what the confidential informant ha[d] on him" when the informant returned from the Bramble Avenue house where he was sent to buy drugs. (*See* Doc. 3, Ex. I, Tr. 67). In any event, as the Ohio Court of Appeals also apparently recognized, petitioner cannot demonstrate that the alleged error had any prejudicial effect on the jury's verdict, "in light of defense counsel's immediate objection," which was sustained, to the hearsay testimony given in response to the prosecutor's question, followed immediately by "the court's curative instruction to the jury." (*See id.,* Ex. E, p. 5).

Petitioner's also objects to remarks made by the prosecutor during opening statement and closing argument about (1) the confidential informant's purchase of cocaine from petitioner on March 8, 2002; and (2) co-defendant William Barlow's role in the trafficking operation as "supplier" of drugs to petitioner. The prosecutor's references to the confidential informant's purchase of drugs from petitioner on March 8, 2002 were not improper. As the Ohio Court of Appeals concluded, such an inference could reasonably be drawn from the evidence, both

---

(unpublished); *Gordon v. Kelly,* 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000) (unpublished); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

direct and circumstantial, which was properly admitted at trial, showing that petitioner was the sole occupant of the Bramble Avenue residence where the purchase occurred and had $120 of the "buy-money" in his possession when he was arrested five days later.

More problematic were the prosecutor's comments about William Barlow's role as petitioner's "supplier." In his opening statement, the prosecutor mentioned that Barlow "may come down to testify that, yes, he was, in fact, supplying" drugs to petitioner. (*See id.,* Ex. I, Tr. 50, 54-55). However, Barlow ultimately did not testify at trial. The prosecutor explained later in response to defense counsel's closing argument (*see id.,* Tr. 228), that he "wasn't sure" at the time of opening statements whether he was going to call Barlow as a witness and, indeed, "made the determination today that we were going to stop when we did." (*Id.,* Tr. 233).

The comment made by the prosecutor in opening statement regarding the substance of Barlow's testimony, which never occurred, may not have been proper, but it was not deliberate or calculated to mislead the jury. Moreover, Paul Fangman testified that "pursuant to the investigation" conducted by the Cincinnati police, it was determined that the "supplier" was Barlow, whose phone number was recovered from petitioner's cell phone at the time of petitioner's arrest and was recognized by Fangman during a check of the stored phone numbers. (*Id.,* Tr. 114-15). The undersigned is not persuaded, as petitioner contends, that Fangman's testimony amounts to improper hearsay evidence, which should not have been admitted at trial.

In any event, even assuming, *arguendo,* that the prosecutor erred in eliciting testimony from Fangman about Barlow's involvement as petitioner's "supplier" in the trafficking operation, the error had little, if any, effect or influence on the jury's verdict. The State's case against petitioner on the trafficking charge turned on the "way the [Bramble Avenue] house was set up," as opposed to Barlow's participation in the criminal activity. (*See id.,* Tr. 212). The prosecutor explained in summation:

> . . . .You are going to see the scales. You are going to see 12 baggies. You are going to see the difference in the way to pack it, to weigh it out; and the most compelling, I think, that goes towards this, just the shear amount that he had on him that day especially heroin, 62 point 25 grams of heroin.

You heard Paul tell you about the difference between a dope user and a dope dealer.  Well, this is about $9,300 worth of heroin. Dope users that you heard Officer Fangman talk about, they get together so many.  They buy small quantities, that's typical of heroin users.

The dealers, that guy has got big chunks and scales and the instruments to divide it up and sell it.

Same way with the cocaine, too.  Officer Kilgore is more of an expert on the street-level cocaine sales, and he talks about 20 pieces and 10 pieces and 20 and 10 bags of cocaine, typically what the average junkie or crack user would buy, that is typical of what they will buy: little chunks and small pieces.

This is about $540 worth of cocaine that was found to be 5 point 4 grams that was the high end.  I believe he said it was 80 to a hundred a gram, depending on the quality of the cocaine.

He's got close to $10,000 worth of drugs in his apartment. What that seems to indicate is that he's a drug dealer.

(*Id.,* Tr. 213-14).

Upon review of the trial transcript, the undersigned concludes that it is highly unlikely the jury was misled to convict petitioner based on any improper remarks or testimony about Barlow's supplying drugs to petitioner for sale. Instead, it is most likely that the jury's verdict of guilt on the trafficking count turned, as argued by the prosecutor, on the evidence discovered at the Bramble Avenue house.

Accordingly, in sum, petitioner has not demonstrated that to the extent the prosecutor even engaged in misconduct, such conduct rendered his trial fundamentally unfair in violation of due process when examined within the context of the entire record.  He also has not shown that the prosecutor's challenged actions  had a substantial and injurious effect or influence on the jury's verdict. Therefore, petitioner is not entitled to habeas relief based on the prosecutorial

17

misconduct claims alleged in Ground Three of the petition, which were asserted by him in the state direct appeal proceedings and in his brief in response to the return of writ.

### D.  Petitioner Is Not Entitled To Relief Based On The Ineffective Assistance Of Trial Counsel Claims Alleged In Ground Four

In Ground Four of the petition, petitioner contends that he was denied his right under the Sixth Amendment to the effective assistance of counsel based on certain errors committed by his attorney at trial.  (Doc. 1, p. 11).  Specifically, he alleges that his counsel did not adequately investigate or prepare for trial, failed to object to the prosecutor's improper remarks, failed to effectively cross-examine witnesses, and failed to move for a mistrial when the confidential informant's hearsay statement came out at trial.  (*Id.*).

The Ohio Court of Appeals summarily rejected this claim of error on direct appeal, finding on review of the record, that "trial counsel's performance did not fall below an objective standard of reasonableness" under *Strickland v. Washington,* 466 U.S. 668 (1984).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his ineffective assistance of counsel claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942; *see also Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005).

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified and applied the proper standard of review that was clearly established by the Supreme Court in *Strickland* for evaluating ineffective assistance of counsel claims. As the state court recognized (*see* Doc. 3, Ex. E, p. 6), in order to establish a Sixth Amendment violation under *Strickland*, the petitioner must demonstrate: (1) his attorney made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate

19

the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate a "reasonable probability" exists that, but for his counsel's deficient conduct, the result of the trial and appeal proceedings would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of his trial would "reasonably likely have been different absent the errors." *See id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *See id.* at 697.

Here, as the Ohio Court of Appeals reasonably determined, petitioner has not shown that his trial counsel's performance fell below an objective standard of reasonableness under the first prong of the *Strickland* test.

First, to the extent petitioner alleges his counsel failed to adequately investigate and prepare for trial, an argument that was not even raised by him on direct appeal to the Ohio Court of Appeals (*see* Doc. 3, Ex. C, pp. 9-10), petitioner is unable to prevail on such claim absent "some showing of what evidence counsel should have pursued and how such evidence would have been material" to the defense. *Hutchison v. Bell,* 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin v. Bell,* 126 F.3d 843, 848 (6th Cir. 1997), *cert. denied,* 523 U.S. 1079, 1088 (1998), and *Martin v. Mitchell,* 280 F.3d 594, 608 (6th Cir.), *cert. denied,* 537 U.S. 1004 (2002), *and cert. denied,* 539 U.S. 938 (2003)), *cert. denied,* 539 U.S. 944 (2003).

Second, petitioner has not demonstrated that his counsel acted unreasonably when Cincinnati police officer Paul Fangman revealed the hearsay statement of the confidential informant. Immediately after the statement came out, defense counsel objected and moved that it be stricken from the evidence. (*See* Doc. 3, Ex. I, Tr. 67). The trial court sustained the objection, struck the hearsay statement from the

evidentiary record, and instructed the jury to disregard "what the confidential informant did" as hearsay.  (*Id.,* Tr. 67-68).  As discussed above when addressing the claims alleged in Grounds One and Five of the petition, *see supra* pp. 7-11, the striking of the objectionable hearsay testimony was all that was necessary to ensure that petitioner was accorded a fair trial  Therefore, petitioner has not demonstrated that his counsel's failure to request a mistrial was unreasonable or prejudicial enough to amount to ineffective assistance in the circumstances of this case.

Third, petitioner has not shown that his counsel was ineffective in failing to object to "improper remarks" made by the prosecutor during trial.  As discussed above in rejecting petitioner's prosecutorial misconduct claims as a basis for habeas relief, *see supra* pp. 15-17, most of the prosecutor's challenged comments were not improper, and to the extent the prosecutor may have erred in referring to co-defendant William Barlow as petitioner's "supplier," such error had little, if any, effect or influence on the jury's verdict.

Finally, upon the review of the record, the undersigned could not find a sufficient evidentiary basis for petitioner's conclusory claim that his counsel failed to "effectively cross-examine witnesses."

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the ineffective assistance of counsel claims alleged in Ground Four of the petition, because the Ohio Court of Appeals' adjudication of this claim on direct appeal neither is contrary to nor involves an unreasonable application of the applicable standard of review clearly established by the Supreme Court in *Strickland*, and is based on a reasonable determination of the facts in light of the record evidence.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the claim alleged in Ground Two of the petition, which this Court has concluded is waived and thus procedurally barred from review, because "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.  *See Slack v.*

*McDaniel,* 529 U.S. 473, 484-85 (2000).[10]  A certificate of appealability also should not issue with respect to petitioner's remaining claims alleged in Grounds One and Three through Five of the petition, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right in any of these grounds for relief.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/19/07                              **/s/Timothy S. Black**

     cbc                                    Timothy S. Black
                                        United States Magistrate Judge

K:\BRYANCC\2007 habeas orders\05-424denypet.waiv.ConfrontCl-hearsy-mistrial.prosmisc.iac.wpd

---

[10]  Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim for relief in Ground Two.  *See Slack*, 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

_____

Keith Greer,
      Petitioner,

                                         Case No. 1:05cv424

      v.                               (Dlott, J.; Black, M.J.)

Tim Brunsman,
      Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).